IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02555-BNB

CANDY COPPINGER,

    Plaintiff,

v.

EXECUTIVE DIRECTOR ARISTEDES W. ZAVARAS,
GRIEVANCE OFFICER ANTHONY DeCESARO,
WARDEN LARRY REID,
ASSOCIATE WARDEN KELLIE WASKO,
MAJOR. McGOWN,
MAJOR THOMPSON,
CAPTAIN FILER,
LIEUTENANT SCOLERI,
LIEUTENANT HUGHBANKS,
SARGENT MINJAREZ,
SARGENT SALAZAR,
CORRECTION OFFICER MILLER,
GRIEVANCE COORDINATOR ELMA BIRD, and
UNKNOWN,

    Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

FEB 22 2011

GREGORY C. LANGHAM
CLERK

## ORDER OF DISMISSAL

Plaintiff, Candy Coppinger, is in the custody of the Colorado Department of Corrections (DOC) and currently is incarcerated at the La Vista Correctional Facility in Pueblo, Colorado. On October 14, 2010, Ms. Coppinger submitted to the Court a Prisoner Complaint asserting violations of her constitutional rights pursuant to 42 U.S.C. § 1983. Magistrate Judge Boyd N. Boland reviewed the Complaint and entered an order on December 2, 2010, instructing Ms. Coppinger to amend the Complaint in

keeping with *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Ms. Coppinger filed an Amended Complaint on January 11, 2011.

The Court must construe the Amended Complaint liberally because Ms. Coppinger is a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). If a complaint reasonably can be read "to state a valid claim on which the plaintiff could prevail, [a court] should do so despite the plaintiff's failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, a court should not act as a *pro se* litigant's advocate. *See id.* For the reasons stated below, the Complaint and the action will be dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(b).

Ms. Coppinger asserts nine claims. In Claim One, Ms. Coppinger states that on January 26, 2009, Defendant Kellie Wasko sent a letter to her that included a "degrotory [sic] labeling comment" which was discriminating and resulted in her losing a "2-men room in Unit !" and being "regressed." (Am. Compl. at 4.) Ms. Coppinger further asserts that in March and April 2009 Defendants Wasko, Elma Bird, and Anthony DeCesaro violated her due process rights when they failed to comply with DOC administrative regulations in processing her grievance.

In Claim Two, Ms. Coppinger asserts that on March 9, 2010, she received a response to her step 1 grievance from Defendant Major Thompson that did not address Defendants Lieutenant Scoleri and Lieutenant Hughbanks' conduct, which was the subject of the grievance. Ms. Coppinger contends that Defendant Thompson's

response violated her right to be treated in a fair and humane manner and her due process rights. Ms. Coppinger further asserts that Defendant Wasko unprofessionally responded to her step 2 grievance by stating "remedy is not a measureable [sic] response to any concern." Ms. Coppinger also asserts that Defendant Wasko, like Defendant Thompson, did not address Defendants Scoleri and Hughbanks' conduct. Ms. Coppinger further asserts that on May 27, 2010, Defendant DeCesaro in his response to the grievance did not address the subject matter of the grievance.

In Claim Three, Ms. Coppinger asserts that on March 16, 2010, Defendant Thompson addressed a step 1 grievance that she had filed against Defendant Warden Larry Reid regarding policy and procedure by stating "you cannot use the grievance procedure to change an answer on a [sic] appeal. Your appeal was researched and answered by Associate Warden Wasko. Your remedy to take a closer look at the tape and paperwork is denied." (Am. Comp. at 10.) Ms. Coppinger contends that Defendant Wasko's answer did not relate to the basis of the appeal and was a generic template response. Ms. Coppinger concludes that Defendants Thompson and Wasko violated her due process rights by not reviewing the grievance in a proper manner. Also, Ms. Coppinger asserts that Defendant Wasko should not have addressed the step 2 grievance against Defendant Reid because someone above Defendant Reid should have reviewed the grievance. Finally, Ms. Coppinger asserts that Defendant DeCesaro failed to uphold the administrative regulations when he addressed the step 3 grievance on April 28, 2010.

In Claim Four, Ms. Coppinger asserts that Defendants Aristedes W. Zavaras and Reid are responsible for ensuring that inmates have access to and knowledge of the

administrative regulations, ACA standards, clinical standards, statutes, dietary standards, and medical standards. Ms. Coppinger contends that without access to these materials her due process rights are violated because she does not know what medical and dental treatment is proper and required.

In Claim Five, Ms. Coppinger asserts that on February 24, 2010, at approximately 2:15 p.m., Defendant Corrections Officer Miller gave her a notice of charges and informed her that a hearing was scheduled on February 25, 2010, after 8:00 a.m. (Although Ms. Coppinger states in the Amended Complaint that the date her hearing was scheduled was February 24, 2010, in the original Complaint, and in other parts of the Amended Complaint, she states the date her hearing was scheduled was February 25, 2010.). Ms. Coppinger also asserts in Claim Five that Defendant Miller asked her if she would waive the twenty-four hour notice rule, to which she responded that she would not. Ms. Coppinger further asserts that on February 25, 2010, her hearing was held at approximately 3:30 p.m., but the time frame for holding the hearing was "manipulated" by Defendants Scoleri and Hughbanks, because they purposely waited for five hours after the last disciplinary hearing was held on the morning of February 25 to conduct her hearing. (Am. Compl. at 12.) Finally, Ms. Coppinger asserts that Defendant DeCesaro did not address Defendants Scoleri and Hughbanks' conduct in the step 3 grievance, which violated her due process rights.

In Claim Six, Ms. Coppinger asserts that after the March 25, 2010, disciplinary hearing took place she learned Defendant Captain Filer violated her due process rights by not following the administrative regulations. Ms. Coppinger further asserts that Defendant Sergeant Minjarez failed to document warnings, missed diet meals, and ECT

4

(Ms. Coppinger does not explain what ECT stands for), which violated administrative regulations and resulted in Ms. Coppinger losing a two-man room, good time, and her job. In Claim Seven, Ms. Coppinger asserts that on June 21, 2009, at approximately 7:30 p.m., she was subjected to an offender personal inventory, which resulted in a notice of charges against her. Ms. Coppinger contends that the notice was insufficient because it did not state where the item in question was found and without this information all "elements" were not met. (Am. Comp. at 13.) Ms. Coppinger further asserts that Defendant Hughbanks failed to follow administrative regulations because when an object is found in a multiple occupancy room all inmates are to be charged. Ms. Coppinger concludes that Defendant Hughbanks' actions violated her due process rights and resulted in her loss of a two-man room, good time, and the opportunity to continue her education.

In Claim Eight, Ms. Coppinger asserts that on August 6, 2009, Defendant Major McGowan addressed a step 1 grievance and denied Ms. Coppinger's appeal of a dismissed disciplinary proceeding, which was dismissed on the basis of a clerical error. Ms. Coppinger contends that Defendant McGowan's actions violated her due process rights and administrative regulations.

In Claim Nine, Ms. Coppinger generally repeats the claims she raises in Claims One through Eight. She also asserts that on February 25, 2010, after the disciplinary hearing, Defendant Scoleri failed to advise her of her right to appeal and sentenced her to five days, which actually was six days. Ms. Coppinger seeks money damages and injunctive relief.

Throughout the Amended Complaint, Ms. Coppinger asserts that her due

process rights were violated because Defendants failed to follow DOC administrative regulations. "[A] failure to adhere to administrative regulations does not equate to a constitutional violation." *See Hovater v. Robinson,* 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citing *Davis v. Scherer,* 468 U.S. 183, 194 (1984)). As discussed below, a review of a plaintiff's disciplinary proceeding is "limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary committee's findings." *Mitchell v. Maynard,* 80 F.3d 1433, 1445 (10th Cir. 1996); *e.g., Diaz v. McGuire,* No. 05-3149, 154 Fed. Appx. 81, 84-85 (10th Cir. (Kan.) Nov. 14, 2005) (stating that prison regulations are not designed to confer rights on inmates, and the process which is due is measured by the due process clause) (unpublished op.), *cert. denied,* 546 U.S. 1221 (2006). The Court finds no denial of due process in Ms. Coppinger's claims based solely on Defendants' failure to process her grievances in accordance with DOC administrative regulations.

Furthermore, Ms. Coppinger does not state a violation of her due process rights simply because she disagrees with the outcome of her grievances or how the grievances were processed. The Court also finds Ms. Coppinger's due process rights were not violated when Defendant McGowan denied her the ability to grieve the dismissal of a disciplinary charge against her or when Defendant Scoleri allegedly failed to inform her of her right to appeal the results of the February 25, 2010, disciplinary hearing. Ms. Coppinger asserts no meritorious basis for appealing the dismissal of the disciplinary charges. As for Defendant Scoleri's failure to notice Ms. Coppinger of her right to appeal, the failure was immaterial because Coppinger indicates in the Amended

6

Complaint that she appealed the disciplinary conviction.

With respect to Ms. Coppinger's claim that she has a due process right to possess copies of administrative regulations, ACA standards, clinical standards, statutes, dietary standards, medical standards, dental standards, and mental health standards, the claim is meritless. There is no constitutional right to possess these materials.

As for Ms. Coppinger's claims that she was denied the opportunity to continue her education and that her job was terminated due to the result of a disciplinary infraction, the termination of a job or denial of educational programs alone are not constitutionally protected liberty interests. Courts have not accepted the claim that an inmate has a constitutional right to any educational programs. *See Termunde v. Cook*, 684 F. Supp. 255, 259 (D. Utah 1988) (citing *French v. Hayne*, 547 F.2d 994, 1002 (7th Cir. 1976)). Also, without a state statute or regulation proclaiming a right, Ms. Coppinger does not have a constitutional right to employment. *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991).

The Constitution does not provide a prison inmate with any liberty interest in her classification or placement because she is not entitled to any particular degree of liberty in prison. *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). Due process guarantees do not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner. *Meachum*, 427 U.S. at 224. Ms. Coppinger, therefore, does not have a liberty interest in being housed in a two-man unit.

The Constitution guarantees due process only when a person is to be deprived of life, liberty, or property. **See Templeman**, 16 F.3d at 369. Ms. Coppinger does not allege that she was deprived of life or property. Therefore, she was entitled to procedural protections only if she was deprived of a liberty interest. The existence of a liberty interest depends upon the nature of the interest asserted. **See Sandin v. Conner**, 515 U.S. 472, 480 (1995). A prisoner is not entitled to any procedural protections in the absence of a grievous loss. **See Morrissey v. Brewer**, 408 U.S. 471, 481 (1972).

Prison regulations may create a liberty interest if they impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." **Sandin**, 515 U.S. at 484. The United States Supreme Court has recognized that a due process liberty interest is at stake when a prisoner's reclassification imposes an "atypical and significant hardship." **See Wilkinson v. Austin**, 545 U.S. 209, 223 (2005). The conditions in **Wilkinson**, however, were extreme, including indefinite solitary confinement that rendered the prisoner ineligible for parole. **See id.** at 224. The extreme conditions found in **Wilkinson** are not present here.

Ms. Coppinger's alleged sentence of five (or possibly six) days is vague and fails to assert restrictions that are sufficiently severe to create a protected liberty interest. **See, e.g., Blum v. Fed. Bureau of Prisons**, No. 98-1055, 1999 WL 638232, at *3 (10th Cir. Aug. 23, 1999) (holding that ninety-day confinement without store privileges, radio, and phone calls did not differ in significant degree and duration from ordinary incidents of prison life to create a protected liberty interest); **Villarreal v. Harrison**, No. 99-1268,

8

1999 WL 1063830, at *2 & n. 1 (10th Cir. Nov. 23, 1999) (concluding that conditions of prisoner's two-year confinement in administrative detention, including restricted telephone privileges and requirement that he eat all of his meals alone in his cell, were not so different as compared with normal incidents of prison life as to give rise to a protected liberty interest); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (holding that thirty-day commissary and cell restrictions did not implicate due process concerns); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (finding no liberty interest in thirty-day sanction that included restrictions on mail and telephone privileges, visitation privileges, commissary privileges, and personal possessions)

To the extent Ms. Coppinger may have a liberty interest in the loss of good time, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Rather, adequate due process at a prison disciplinary hearing requires only that a prisoner be provided with written notice of the charges against her no less than twenty-four hours in advance of the disciplinary hearing, an opportunity to call witnesses and present documentary evidence in her defense if doing so would not be unduly hazardous to institutional safety or correctional goals, and a written statement by the factfinders of the reasons for the decision and the evidence on which they relied. *See id.* at 563-66; *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990).

Here, Ms. Coppinger asserts that she was provided notice at approximately 2:15 p.m. on February 24, 2010, of a disciplinary hearing that was scheduled the following

day sometime after 8:00 a.m., which she claims violated her due process rights. Ms. Coppinger, however, further asserts that Defendant Miller also asked her if she would waive the twenty-four hour notice requirement and that she responded that she would not. As a result, Ms. Coppinger's disciplinary hearing was held, according to Ms. Coppinger, at approximately 3:30 p.m. on February 25, 2010. Even though Ms. Coppinger argues that Defendants Scoleri and Hughbanks manipulated the time frame by holding her hearing five hours after all the other hearings were completed on February 25, the alleged manipulation is immaterial because Ms. Coppinger had twenty-four hours notice of the hearing. Therefore, Ms. Coppinger fails to assert a violation of her due process rights.

There also must be some evidence to support a disciplinary conviction. **Superintendent, Mass. Correctional Inst., Walpole v. Hill**, 472 U.S. 445, 454 (1985); **Mitchell**, 80 F.3d at 1445. "Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." **Hill**, 472 U.S. at 455-56; see **Mitchell**, 80 F.3d at 1445. The disciplinary decision will be upheld even if the evidence supporting the decision is "meager." **Mitchell**, 80 F.3d at 1445 (citing **Hill**, 472 U.S. at 457). Constitutionally adequate due process at a prison disciplinary hearing does not require that a plaintiff be informed of every detail of the charges against her so that she can prepare what in her opinion is the best defense. It only requires that she be informed of the charges to

enable her to marshal the facts and prepare a defense. *Wolff*, 418 U.S. at 564.

Here, Ms. Coppinger asserts that her due process rights were violated because the notice of charges given to her on June 21, 2009, did not include the location of an item that was found during an inventory of the room where she was housed. Ms. Coppinger, however, does not claim that the notice of charges filed against her failed to inform her of what charges had been filed against her. She only claims that she was not told where the item in question was found in the room where she was housed. Not being informed where an item was found during an inventory of a room, per se, does not violate Ms. Coppinger's due process rights.

Ms. Coppinger's claim of discrimination against Defendant Wasko also is without merit. Ms. Coppinger states that she was discriminated against because Defendant Wasko was unprofessional, made a derogatory and labeling comment in a letter she addressed to Ms. Coppinger, and caused her to lose her two-man room. Ms. Coppinger may not rely on vague and conclusory allegations that her rights have been violated. *See Fogle v. Pierson*, 435 F.3d 1252, 1263 n.7 (10th Cir. 2006). Even when read liberally, Ms. Coppinger's allegation is conclusory and does not support a claim that she was denied equal protection. Ms. Coppinger fails to assert how she was treated differently from other similarly situated inmates in the loss of her two-man room. *See Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir.1996).

The Court, therefore, finds that Ms. Coppinger's claims are subject to dismissal because she fails to state a nonfrivolous claim. Accordingly, it is

ORDERED that the Complaint and action are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b)(i). It is

FURTHER ORDERED that all pending motions are denied as moot.

DATED at Denver, Colorado, this  22nd  day of   February  , 2011.

BY THE COURT:


   s/Lewis T. Babcock
LEWIS T. BABCOCK, Judge
United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**CERTIFICATE OF MAILING**

Civil Action No. 10-cv-02555-BNB

Candy Coppinger
Prisoner No. 59072
La Vista Corr. Facility
1401 W. 17th Street
Pueblo, CO 81003

    I hereby certify that I have mailed a copy of the **ORDER and JUDGMENT** to the above-named individuals on February 22, 2011.

GREGORY C. LANGHAM, CLERK

By: _____
        Deputy Clerk